**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| HEARTLAND CONSUMER PRODUCTS LLC and TC HEARTLAND LLC,     )<br>    )<br>*Plaintiff*,     )<br>    )<br>vs.     )<br>PEET'S COFFEE, INC.     )<br>    )<br>*Defendant*.     ) | Case No.: ___3:23CV819___<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

For their causes of action against Defendant Peet's Coffee, Inc. (hereinafter referred to as "Peet's" or "Defendant"), Plaintiffs, Heartland Consumer Products LLC (hereinafter referred to as "HEARTLAND") and TC Heartland LLC (hereinafter referred to as "TC HEARTLAND") (hereinafter collectively referred to as "Plaintiffs") state as follows:

**Nature of the Action**

1.      Peet's is a Virginia corporation that operates hundreds of coffee shops and licensed partnerships across the United States. Peet's offers its customers a variety of coffee and tea beverages that may be customized using sweeteners that may be added by the store at time of sale or by the customers themselves after they have received their drinks.

2.      Regardless, Peet's continues to inform its customers that it carries American-made SPLENDA® sucralose-based sweetener offered in yellow packets.

3.      Peet's further fails to exercise its authority and allows its licensees to misuse the SPLENDA® mark.

1

4. Plaintiffs now bring this action for injunction, damages, and other appropriate relief arising out of Defendant's violations of trademark and trade dress infringement, dilution and unfair competition under the Lanham Act, Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq*, and the common law of the State of Virginia.

5. Defendant has unfairly, and in violation of the law, limited HEARTLAND's trademark rights in SPLENDA® by deceiving customers into believing the Peet's coffee shops carry SPLENDA® tabletop sweeteners ("SPLENDA® Brand Sweetener"), while providing consumers with sweeteners for which the active ingredients are manufactured in the People's Republic of China—rather than the American-made SPLENDA® Brand Sweetener product— thereby damaging the hard-earned reputation held by HEARTLAND and whittling away at the value of its trademark by using it to identify non-SPLENDA sucralose-based sweeteners.

6. HEARTLAND is a global leader in the production of low calorie sweetener products, including the iconic SPLENDA® Brand Sweetener, creamers, beverage concentrates, coffee and nutritional drinks. As the owner of various and famous trademarks, HEARTLAND seeks damages and injunctive relief to enjoin Defendant's wrongful use of the SPLENDA® trademark in commerce.

## Parties, Jurisdiction, and Venue

7. HEARTLAND is a limited liability company, organized and existing under the laws of the State of Delaware, with a principal business address of 14390 Clay Terrace Boulevard, Suite 205, Carmel, Indiana 46032, in Hamilton County.

8. TC HEARTLAND is a limited liability company, organized and existing under the laws of the State of Indiana, with a principal place of business at 14390 Clay Terrace Boulevard, Suite 205, Carmel, Indiana 46032, in Hamilton County.

2

9.      Upon information and belief, Peet's Coffee, Inc. is a corporation organized and existing under the laws of the State of Virginia, with a principal business address of 1400 Park Avenue, Emeryville, California 94608. It is in the business of operating coffee shops and licensed partnerships in across the United States.

10.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 1367, and 15 U.S.C. § 1121.

11.     This Court has personal jurisdiction over Defendant because Virginia is Defendant's place of incorporation, one of the "paradigm" forums in which a corporate defendant is essentially "at home" in the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

12.     Venue is proper in this district under 28 U.S.C. § 1391(c) because Defendant is incorporated in Virginia and is subject to personal jurisdiction herein.

### SPLENDA® Background

13.     Years ago, researchers from an established British college in conjunction with Tate & Lyle PLC, were researching a new compound made from sugar, called sucralose. As the story goes, a young researcher misheard a request to "test" the compound as a request to "taste" it. What they discovered was that sucralose was incredibly sweet and, more importantly, calorie free. By 1990, several food and health organizations approved the use of sucralose in food products, the sweetening ingredient in SPLENDA® Brand Sweetener. Capitalizing on this approval, SPLENDA® Brand Sweetener made its worldwide debut in Canada.

14.     In the United States, the FDA approved sucralose for use in connection with food products and food preparation on April 1, 1998. Once again, SPLENDA® Brand Sweetener was at the forefront of the low-calorie sweetener market by marketing SPLENDA® Brand Sweetener to U.S. consumers via the Internet in 1999. In September 2000, SPLENDA® Brand Sweetener

officially launched in retail stores across the United States. In three short years after its launch in the United States, SPLENDA® Brand Sweeteners became the unrivaled leader in the low-calorie sweetener retail and food service markets. Unlike all other tabletop sucralose sweeteners in the market, SPLENDA® Brand Sweetener is made in America.

15.     Sucralose has become one of the most extensively tested food ingredient in the world. It is approved for use in over 80 countries and used in more than 4000 products globally. SPLENDA® Brand Sweeteners are by far the most preferred low calorie sweetener products in the United States.

16.     On September 25, 2015, HEARTLAND purchased the SPLENDA® brand.

17.     Each year, American consumers spend more than $700 million on sugar substitutes — products that take the place of sugar but are low in calories. As a result of its years of brand investment SPLENDA brand sucralose sweeteners have the highest retail market share of any sugar substitute at 26%.

18.     SPLENDA® branded sucralose is sold in both retail and food service markets and used in a variety of products across private and commercial kitchens. SPLENDA® Brand Sweeteners are used to sweeten beverages and purchased by consumers for cooking and baking in their homes. SPLENDA® branded sucralose is also used as an ingredient in third-party commercial food production. Across marketplaces, SPLENDA® Brand Sweeteners have gained the trust of customers by providing a superior product and brand experience for over two decades. As a result, SPLENDA® is the market leader among low-calorie sweeteners in the United States.

19.     SPLENDA®  Brand Sweetener is the only sucralose-based sweetener offered for sale in the United States that is also manufactured in the United States.  Plaintiffs regularly tout

this fact in their advertising, and consumers have come to appreciate that SPLENDA® Brand Sweetener is American-made.

20.     HEARTLAND has expended and continues to expend substantial time, effort, and other resources in acquiring, developing, advertising and otherwise promoting, SPLENDA® Brand Sweeteners both nationally and globally. As a result, SPLENDA® is a famous brand, instantly and widely recognized by consumers, the public, and the trade.

### The HEARTLAND Intellectual Property

21.     HEARTLAND, and its predecessors in interest, have used a variety of legally-protected trademarks in connection with its SPLENDA® branded products. HEARTLAND, through assignment, is the current owner of the following United States Trademark Registration (although not an exhaustive list of all Trademark Registration owned by HEARTLAND: Reg. Nos. 1544079, 3346910, 5286183, 5434655, and 6169703. For purposes of this Complaint, Reg. No. '079 is referred to as the "Trademark Registration").

22.     SPLENDA® has become a household name in connection with artificial sweeteners, particularly sucralose.

23.     SPLENDA® Brand Sweetener is also well-known and famous for its trade dress. Specifically, SPLENDA® Brand Sweetener is packaged in yellow-colored packets (the "Trade Dress").

24.     The Trademark Registration and Trade Dress, including any and all related common law rights in the United States, shall be referred to herein as the SPLENDA IP.

25.     The SPLENDA IP has been used continuously, with wide promotion, and has never been abandoned.

5

26.     The SPLENDA IP is non-functional, as it has no functional aspects and only serves as a source identifier.

**Defendant's Infringing Conduct and Plaintiff's Pre-Suit Investigation**

27.     Despite no longer selling or distributing SPLENDA® Brand Sweeteners, Defendant has continued to offer to consumers what it purports to be SPLENDA® Brand Sweeteners. As a number of investigators have confirmed across selected and geographically located Peet's stores, the vast majority of the Peet's stores proffered generic yellow tabletop sweeteners as SPLENDA® Brand Sweeteners, intending to palm off the goodwill and association of the yellow color with genuine SPLENDA® Brand Sweeteners.

28.     In the fall of 2022, Heartland undertook an investigation into how Defendant was representing its sucralose sweetener to the consuming public.  This investigation, performed by qualified private investigators, revealed a concerning pattern and practice by Defendant's employees, at multiple stores, to misrepresent sweetener product as genuine SPLENDA® Brand Sweetener when it was not, despite specific inquiries to test the veracity of those representations.

29.     Specifically, Heartland engaged private investigators to enter 25 Peet's locations and to order a small coffee.  The investigators then asked "What sweeteners do you have back there?" Employees at 8 of the 24 Peet's locations surveyed offered SPLENDA® by name, despite having no such genuine SPLENDA® product to offer. Employees at 15 of the remaining 16 Peet's locations answered in the affirmative to "Do you have Splenda?" At the only Peet's location where employees answered in the negative to both questions, the investigators selected the yellow packet and asked "Is this the same as Splenda?" The employees responded, "This is basically Splenda."

30.     Further, when an investigator stated "I'll take two Splendas," she was directed to choose her own sweetener from a separate bar containing various tabletop sweeteners at 10 of the

24 locations. At 2 of the 24 locations, employees directly handed the investigators yellow sugar packets instead.  At 4 of the 24 locations, an employee added the sweetener directly to the drink, with no affirmative representation that what was being added was not genuine SPLENDA®. At these four locations, the investigators then asked "You put Splenda in this, right?" Employees at all four Peet's locations answered in the affirmative.

31.     Heartland repeated this investigation in the fall of 2023, using the same methodology at largely the same stores (some had closed since 2022).  The results were the same. Eight (8) of the 24 surveyed stores reported that they had Splenda by name when asked "what sweeteners do you have?"  Of the remaining 16 that did not identify SPLENDA® by name, 12 said "yes" in response to the question of "Do you have Splenda?", and 1 said that it "is basically Splenda."

32.     Peet's did not carry genuine SPLENDA® Brand Sweetener in its stores in 2022 or 2023.

33.     What these investigations revealed was indisputable, unequivocal evidence of intentional misrepresentation of sucralose sweetener as genuine SPLENDA® Brand Sweetener when it was not.  This is more than a lack of proper training of these employees, although certainly it is evidence of that as well.  It is unlikely that properly trained employees would misrepresent non-genuine, Chinese-manufactured, sucralose as genuine SPLENDA® Brand Sweetener.

34.     Consumers who request SPLENDA by name deserve the real thing.  Defendant's misconduct deprives those consumers of their choice of product, as well as the choice to not ingest a cheaper, Chinese manufactured product.  It is important for companies such as Defendant to accurately and completely identify its products to its consumers, and not deceive them as to the source of the sweeteners requested by name.

7

35.     The presence of yellow-packaged sweetener not sourced from Plaintiffs and available for consumption at Defendant's stores only serves to increase the likelihood of confusion present in Defendant's customers.  The oral misrepresentation of these products as genuine SPLENDA® is obvious in its effect on consumers.  But, the coupling of those oral misrepresentations with the presence of sucralose sweetener bearing the famous trade dress of Plaintiffs that includes the color yellow amplifies the likelihood of confusion, if not also a singular source of confusion standing alone.

36.     This investigation has thus established that Defendant is engaged in, and/or has engaged in, the willful and intentional active deception of customers through misappropriation of the SPLENDA IP, leading customers to believe or likely to believe that Defendant carries SPLENDA® Brand Sweeteners when it does not. Defendant's specific conduct includes, but is not limited to:

    a.     Representing the use of SPLENDA® Brand Sweetener in Peet's coffee shops through oral affirmation to customers, despite the fact that Peet's does not carry or provide genuine SPLENDA® Brand Sweetener;

    b.     Representing the use of SPLENDA® Brand Sweetener in Peet's coffee shops through oral affirmation to customers that the sweetener provided in yellow packets is actually SPLENDA® Brand Sweetener, despite the fact that the provided sweetener is not SPLENDA® Brand Sweetener;

    c.     By failing to notify customers ordering genuine SPLENDA® Brand Sweetener that any product added to the customers' orders is not, in fact, SPLENDA® Brand Sweetener;

8

      d.     By providing yellow-packeted sucralose sweetener in stores despite the famous trade dress owned by Plaintiffs in connection with their genuine SPLENDA® Brand Sweetener; and

      e.     By failing to provide sufficient cues to the consumer that the yellow-colored sweetener packets are not the leading brand sweetener formerly carried in the restaurants.

37.     Defendant's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that the non-SPLENDA® sweetener provided by Defendant *is* SPLENDA® Brand Sweetener.

38.     Defendant has a wide network of stores and licensed partnerships, and with knowledge or reckless disregard of HEARTLAND's rights in the SPLENDA IP, have contributed to misidentification of non-SPLENDA® sweetener as actual SPLENDA® Brand Sweetener.

39.     Defendant's activities, as described above, have created actual false impressions, consumer confusion, and consumer deception, among the public and the trade such that they harbor a mistaken belief that SPLENDA® Brand Sweetener is being offered at Peet's coffee shops.

40.     Plaintiffs have expended substantial resources to market and promote SPLENDA® Brand Sweetener and the fact that SPLENDA® Brand Sweetener is manufactured in the United States. This has been a key element of HEARTLAND's marketing campaign for the SPLENDA® Brand. Consumers have, therefore, come to expect that when they ask for SPLENDA® Brand Sweetener they are receiving the highest quality low-calorie sweetener long represented by the SPLENDA® Brand.

41.     Peet's has also attempted to palm off the goodwill and association of the famous SPLENDA® yellow trade dress. Namely, using a third-party sucralose supplier, Peet's provides tabletop sucralose sweetener in yellow packets bearing the Peet's trademarks. The use of the

yellow packaging, standing alone and in combination with an absence of any oral or other cues to customers that the product is not genuine SPLENDA® Brand Sweetener leads customers to believe the Peet's labeled packets are associated with, affiliated with, or sponsored by SPLENDA®.

42.     Consumers have a right to receive SPLENDA® Brand Sweetener when they ask for it by name. They also have a right to be told the truth about what is being added to their beverages and to not be deceived, whether intentionally or not, by companies secretly substituting sweeteners for genuine, American-made SPLENDA® Brand Sweetener. Plaintiffs bring this suit not only to vindicate their own rights but also to protect consumers from this deceptive conduct.

43.     Upon information and belief, Defendant intends to continue the above-detailed course of conduct unless otherwise restrained.

44.     Plaintiffs are suffering irreparable injury and has suffered substantial damages as a result of Defendant's activities, and has no adequate remedy at law.

## COUNT I

**Common Law Trademark Infringement and
Federal Trademark Infringement (15 U.S.C. § 1114(1)(a))**

45.      HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 44 above as if fully and separately set forth in this section of the Complaint.

46.     Defendant used the SPLENDA® trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

47.     Defendant further provided yellow packets of non-SPLENDA® sweetener without sufficient cues to identify the product as not being genuine SPLENDA® Brand Sweetener.

10

48.     Defendant's use of the SPLENDA® trademark was without the consent or authorization of HEARTLAND.

49.     In this misconduct, Defendant has infringed the rights of HEARTLAND as the registrant of the subject mark.

50.     Upon information and belief, Defendant engaged in this infringement with knowledge, and willfully and intentionally.

51.     As a result of Defendant's conduct, HEARTLAND has been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendant's profits from the sale of infringing goods, actual damages, statutory damages, treble damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

52.     The above-described acts of Defendant has caused and are continuing to cause irreparable injury to Plaintiffs, their reputations, and goodwill. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damage as a result of the acts of Defendant. HEARTLAND is therefore also entitled to permanent injunctive relief.

## COUNT II

### False Designation of Origin (15 U.S.C. §1125(a)(1)(A)) and
### False Advertising (15 U.S.C. §1125(a)(1)(B))

53.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1 through 52 above as if fully and separately set forth in this section of the Complaint.

54.     Defendant's identification of non-SPLENDA® Brand Sweetener as genuine SPLENDA® Brand product constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is: (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of Defendant's goods, services, or

11

commercial activities; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of Defendant's goods, services or commercial activities.

55.     Further, Defendant's offer for sale of non-SPLENDA® Brand Sweetener in yellow packets commonly associated with genuine SPLENDA® Brand product, and otherwise without sufficient cues to the consumer of the true nature of the product, constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is: (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of Defendant's goods, services or commercial activities.

56.     Defendant has also misrepresented its off-brand sucralose sweetening product as having the benefits of being "Made in America" when in fact it was not, because SPLENDA® Sweeteners are actually made in the United States.

57.     Defendant's use of the SPLENDA® trademark and other marks was without the consent or authorization of HEARTLAND.

58.     In this misconduct, Defendant has violated the rights of at least HEARTLAND as the owner of the subject marks and trade dress and TC HEARTLAND as the licensee of the SPLENDA IP.

59.     Defendant's wrongful promotion of its goods as genuine SPLENDA® Sweetener was committed, upon information and belief, with knowledge that Defendant was misrepresenting the nature, characteristics, qualities and/or geographic origin of their goods, by way of providing

consumers with literally false information about the use of SPLENDA® Brand products in the Peet's coffee shops, or by way of providing information that was misleading in context.

60.     As a result of Defendant's conduct, HEARTLAND has been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendant's profits from the sale of infringing goods, actual damages, statutory damages, treble damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

61.     The above-described acts of Defendant has caused and are continuing to cause irreparable injury to Plaintiffs, their reputations, and goodwill. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damage as a result of the acts of Defendant. HEARTLAND is therefore also entitled to permanent injunctive relief.

## COUNT III

### Unfair Competition

62.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 61 above as if fully and separately set forth in this section of the Complaint.

63.     Defendant has engaged in unfair competition against Plaintiff. These acts have included, but are not limited to, the following particulars:

a.     Unauthorized use of the SPLENDA® Brand (and other marks) in connection with the offering of goods and services at Peet's places of business;

b.     Misrepresenting non-SPLENDA® Brand Sweetener as genuine SPLENDA® Brand Sweetener;

13

c.      Offering for sale sucralose-based product in yellow packets commonly associated with genuine SPLENDA® Brand Sweetener without sufficient cues that the product is not genuine SPLENDA® Brand Sweetener;

d.      Reaping the benefits of customer association of Defendant with the SPLENDA® Brand and other HEARTLAND marks without paying HEARTLAND for that benefit; and/or

e.      Misrepresenting Defendant's off-brand sucralose sweetening product as having the benefits of being "Made in America" when in fact it was not, because SPLENDA® Sweeteners are actually made in the United States.

64.     Upon information and belief, this unfair competition was engaged in by Defendant intentionally and willfully.

65.     As a result of Defendant's conduct, Plaintiffs have been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendant's profits from the sale of infringing goods, actual damages, punitive damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

66.     The above-described acts of Defendant has caused and are continuing to cause irreparable injury to Plaintiffs, their reputations, and goodwill. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damage as a result of the acts of Defendant. HEARTLAND is therefore also entitled to permanent injunctive relief.

## COUNT VI

**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. § 59.1-196, *et seq.*)**

67.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1 through 66 above as if fully and separately set forth in this section of the Complaint.

14

68.     Defendant's misrepresentations of its lesser quality, Chinese-manufactured sucralose sweetening products or other non-genuine SPLENDA® branded products as SPLENDA® Brand Sweeteners violates the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200.

69.     Defendant has explicitly misrepresented its products as those of genuine SPLENDA®.

70.     Defendant has also misrepresented the source, sponsorship, approval, or certification of its goods as those of Plaintiffs.

71.     By misrepresenting its Chinese-made sucralose sweetening product as SPLENDA®, which is made in America, Defendant has also misrepresented the geographic origin of its products.

72.     Defendant's has misrepresented their affiliation, connection, or association with, or certification with Plaintiffs.

73.     As a proximate result of Defendant's above-described conduct, HEARTLAND has suffered damages including but not limited to lost sales and lost profits.

74.     The above-described acts of Defendant has caused and are continuing to cause irreparable injury to Plaintiffs, their reputations, and goodwill. Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damage as a result of the acts of Defendant.

75.     Plaintiffs are entitled to injunctive relief against Defendant for its violations of Va. Code Ann. § 59.1-200.

76.     Plaintiffs have incurred, and will continue to incur, attorneys' fees and court costs arising from the acts of Defendant and therefore seek the recovery of attorneys' fees and costs as the prevailing party in this action.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

A.       Finding that Defendant violated 15 U.S.C. §§ 1114(a), 1125(a) and other statutory and common law authority under both federal and state law, including direct, contributory and/or vicarious trademark infringement, unfair competition, false advertising, and violation of Va. Code Ann. § 59.1-196, and did so by their knowing and intentional unauthorized use of the SPLENDA® IP;

B.       Ordering that pursuant to common law, equitable principles, the Lanham Act and other statutes, Defendant and its owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, and all those that act in concert with them, are enjoined permanently thereafter from:

i.       Directly or contributorily infringing on the SPLENDA® IP;

ii.       Marketing, advertising, selling, promoting, exhibiting, or displaying any product using the SPLENDA® IP, and

iii.       Directly or contributorily using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that Defendant provides SPLENDA® Brand Sweetener or is otherwise endorsed by, sponsored by, or connected with Plaintiff;

iv.       Holding themselves out or contributing to any affiliate to hold themselves out as an authorized user of the SPLENDA® IP or other HEARTLAND marks; and

> v.      Such other equitable and injunctive relief to which HEARTLAND may show itself otherwise entitled.

C.      Ordering that pursuant to common law, equitable principles, the Lanham Act, and other statutes, Defendant must engage in corrective advertising as reasonably required to:

> i.      Correct the misinformation in the marketplace that Peet's sucralose-based products are genuine SPLENDA® Brand Sweetener products;

> ii.      Give notice to all Peet's customers that Peet's sucralose-based sweetener is actually sourced from China, and is not manufactured in the United States; and

> iii.      Provide Defendant's employees such training as reasonably necessary to prevent the misidentification of sucralose sweetener as genuine SPLENDA® Brand Sweetener.

D.      Ordering that pursuant to common law, equitable principles, the Lanham Act, and other statutes, Plaintiffs are awarded such damages available under federal and Virginia law, including but not limited to:

> i.      Actual damages;

> ii.      Statutory damages;

> iii.      Defendant's profits;

> iv.      The costs of corrective advertising;

> v.      Punitive damages;

> vi.      Treble damages;

> vii.      Costs of this litigation;

viii.    Attorneys' fees associated with this litigation

ix.    All other damages arising from the unlawful and unauthorized use

of the SPLENDA® IP or other HEARTLAND marks; and

x.    All other just and proper relief.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: December 5, 2023                    Respectfully submitted,

**HEARTLAND CONSUMER PRODUCTS LLC
AND TC HEARTLAND LLC**

_/s/ Kevin D. Holden_____
Kevin D. Holden (VA Bar No. 30840)
JACKSON LEWIS, P.C.
701 E. Byrd St., 17th Floor
P.O. Box 85068
Richmond, VA 23285
Telephone: 804-649-0404
Facsimile: 804-649-0403
Kevin.Holden@jacksonlewis.com

Jonathan G. Polak (_pro hac vice_ pending)
jpolak@taftlaw.com
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46240
Tel: (317) 713-3500

_Counsel for Plaintiffs_

18